CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 – Fax

July 17, 2013

Stephen F. Shea, Esq.
Elkind and Shea
801 Roeder Road, Suite 550
Silver Spring, MD 20910

Alex S. Gordon, Esq.
Office of the United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, MD 21201

      Re:  Joseph Thomas Powell v. Commissioner Michael J. Astrue
           Civil No. SKG 10-02677

Dear Counsel:

    Plaintiff, Joseph T. Powell, by his attorney, Stephen F.

Shea, filed this action seeking judicial review pursuant to 42

U.S.C. § 405(g) of the final decision of the Commissioner of the

Social Security Administration ("the Commissioner"), who denied

his claim for Supplemental Security Income ("SSI") under section

1631(c)(3) of the Social Security Act ("the Act"). This case

has been referred to the undersigned Magistrate Judge by consent

of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule
301.  No hearing is necessary. Local Rule 105.6.

Currently pending before the Court are cross motions for
summary judgment and plaintiff's request for remand in the
alternative.  The Court has concluded that under the applicable
law, he is not entitled to disability.  For the reasons that
follow, the Court hereby DENIES plaintiff's motion for summary
judgment, GRANTS defendant's motion for summary judgment, and
AFFIRMS the decision of the Administrative Law Judge ("ALJ").

## I.  Procedural History

On March 18, 2008, plaintiff applied for SSI benefits,
alleging that he had become unable to work beginning December
31, 2005 due to heart problems, depression, arthritis,
hypertension, anxiety, and high cholesterol. (R. 12, 137).
Plaintiff later amended the onset date of December 31, 2005 to
March 18, 2008 at the administrative hearing held on July 30,
2009. (R. 23, 26).

On August 6, 2008, plaintiff's application for SSI was
denied at the initial level. (R. 69-71). His application was
denied again upon reconsideration on January 22, 2009. (R. 76-
77). Thereafter, the plaintiff filed a request for a hearing by
an ALJ. (R. 78-79). An administrative hearing was held on July
31, 2009 before ALJ Edward J. Banas. (R. 23). On September 25,
2009, the ALJ issued an unfavorable written decision that

plaintiff was not disabled within the meaning of the Act. (R. 12-22).

The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the agency. (R. 1-3). Plaintiff now seeks review of that decision pursuant to 42 U.S.C. § 405(g).

## II.  Factual History

The Court has reviewed the Commissioner's Statement of Facts and, finding that it accurately represents the record in all material respects, hereby adopts it.

## III. ALJ Findings

In reviewing a claimant's eligibility for SSI, an ALJ must consider all of the evidence in the record and follow the sequential five-step analysis set forth in the regulations to determine whether the claimant is disabled as defined by the Act.  20 C.F.R § 416.920(a).[1]  If the agency can make a disability determination at any point in the sequential analysis, it does not review the claim further.  20 C.F.R. § 404.1520(a)(4).  After proceeding through each of the required steps, the ALJ in this case concluded that Mr. Powell was not disabled as defined by the Act.  (R. 12).

---

[1] Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A).

At the first step, the claimant must prove that he or she is not engaged in "substantial gainful activity."[2]  20 C.F.R. § 416.920(a)(4)(i).  If the ALJ finds that the claimant is engaged in "substantial gainful activity," he or she will not be considered disabled.  Id.  Here, the ALJ found that Mr. Powell "did not engage in any substantial gainful activity after March 18, 2008", the alleged onset date.  (R. 14).

At the second step, the ALJ must determine whether the claimant has a severe, medically determinable impairment or a combination of impairments that limit his ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921.  In addition, there is a durational requirement that the claimant's impairment last or be expected to last for at least 12 months.  20 C.F.R. § 416.909.  Here, the ALJ found that medical records support Mr. Powell's diagnoses of coronary heart disease, degenerative joint disease, osteoarthritis of the knee, hyperlipidemia, hypertension, right shoulder with radiculopathy, depression, and anxiety, and "these impairments cause more than a minimal

---

[2] Substantial gainful activity is defined as "work activity that is both substantial and gainful."  20 C.F.R. § 416.972.  Work activity is substantial if it involves doing significant physical or mental activities and even if it is part time or if plaintiff is doing less, being paid less, or has fewer responsibilities than when she worked before.  20 C.F.R. § 416.972(b). Substantial gainful activity does not include activities such as household tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. § 416.972(c).

limitation in the claimant's ability to perform basic work activities." (R. 14).

At the third step, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or equal an impairment enumerated in the "Listing of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  If one of the Listings is met, disability will be found without consideration of age, education, or work experience.  20 C.F.R. § § 404.1520(d), 416.920(d). Here, the ALJ found that Mr. Powell does not have an impairment or combination of impairments that meet or equal an impairment enumerated in the "Listing of Impairments." (R. 14).

More specifically, the ALJ reviewed Listings 1.02 (major dysfunction of joints), 1.04 (disorders of the spine), and 4.04 (ischemic heart disease) to address Mr. Powell's physical impairments, and Listings 12.04 (affective disorder) and 12.08 (personality disorder) to address his mental impairments. (R. 15).

In regard to the physical impairments, the ALJ found that the claimant did not meet the criteria for Listing 1.02 (major dysfunction of joints) because he "does not have any difficulty ambulating effectively or performing fine and gross movements." (R. 15). He also found that the claimant did not meet Listing 1.04 (disorders of the spine) because there was "no evidence of

nerve root compensation, spinal arachnoiditis, or lumbar spinal stenosis accompanied by the inability to ambulate effectively or sensory or reflex loss." (R. 15). Finally, the ALJ found that the claimant did not meet Listing 4.04 (ischemic heart disease) because there were no exercise tests in the record that demonstrated the results and limitations described in the listing. (R. 15).

In regard to the mental impairments, the ALJ examined Listings 12.04 (affective disorder) and 12.08 (personality disorder). In order to meet these listings, the claimant must meet the requirements in either both "paragraph A" and "paragraph B" or "paragraph C" alone. 20 C.F.R. § 404, Subpart P, Appendix 1. To satisfy "paragraph A" criteria, the claimant must show medically documented persistence of depressive syndrome, manic syndrome, or bipolar syndrome. Id. To satisfy "paragraph B" criteria, the claimant must show at least two of the following criteria: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation of extended duration. Id. Where a "marked" level is required, it means more than moderate but less than extreme. Id.

The ALJ found that Mr. Powell did not satisfy "paragraph B" requirements because his mental impairments do not result in

marked limitations or in repeated episodes of decompensation. (R. 15-16). The ALJ found that Mr. Powell has only mild restriction in activities of daily living due to his ability to complete personal care without assistance and perform activities like "grocery shopping, watching television, attending his daughter's field trips, and preparing light meals." (R. 15). The ALJ found that Mr. Powell has only mild difficulties in social functioning based on the socially appropriate behaviors exhibited during his mental evaluations. (R. 15). The ALJ concluded that Mr. Powell has moderate difficulties in concentration, persistence or pace, because the record shows that the pain resulting from his impairments and the side effects from the medications to treat that pain result in moderate difficulties in maintaining concentration. (R. 15). With regard to the final factor, the ALJ found that Mr. Powell has not experienced any episodes of decompensation of extended duration, because the record does not indicate repeated hospitalizations for depression or anxiety. (R. 15). Moreover, the ALJ points out that Mr. Powell does not see a therapist or psychiatrist for treatment of his mental impairments at all. (R. 15). Because Mr. Powell does not have at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not met. (R.

15). Because "paragraph B" criteria are not met, satisfaction of "paragraph A" criteria is irrelevant.

To satisfy "paragraph C" criteria, the claimant must show a medically documented history of the affective disorder of at least two years that has caused more than minimal limitation of ability to do basic work activities, "with symptoms or signs currently attenuated by treatment or psychosocial support." 20 C.F.R. § 404, Subpart P, Appendix 1. In addition, the claimant must show at least one of the following: repeated episodes of decompensation of extended duration, a disease process that indicates that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate, or a current history of an inability to function outside of a highly supportive living arrangement. Id.

The ALJ concluded that Mr. Powell did not satisfy "paragraph C" requirements. (R. 16). The ALJ found that the record was devoid of evidence that established repeated episodes of decompensation, potential episodes of decompensation, or Mr. Powell's inability to function outside of a highly supportive environment. (R. 16).

Before an ALJ advances to the fourth step of the sequential analysis, she must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an

assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  Social Security Ruling (SSR) 96-8p.  The ALJ must consider even those impairments that are not "severe."  20 C.F.R. § 404.1545(a)(2).

In determining a claimant's RFC, ALJs evaluate the claimant's subjective symptoms, such as allegations of pain, using a two-part test.  Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529.  First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms.  20 C.F.R. § 404.1529(b).  Once the claimant makes that first showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work.  20 C.F.R. § 404.1529(c)(1).  At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant.  20 C.F.R. § 404.1529(c).  The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence.  SSR 96-7p. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for

his symptoms, medications, and any other factors contributing to functional limitations. Id.

The ALJ determined that Mr. Powell had medically determinable impairments, including coronary heart disease, degenerative joint disease, osteoarthritis of the knee, and depression that could reasonably be expected to cause the alleged symptoms. (R. 17). However, the ALJ found that Mr. Powell's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible, because "the medical evidence of record does not substantiate the claimant's allegations[.]" (R. 17). The ALJ relied on reports from examining physicians that indicated Mr. Powell was stable in terms of his heart disease and orthopedic condition. (R. 18, 20-21). In addition, the ALJ noted the unremarkable EKG results, physical examination results, and MRI results and the fact that Mr. Powell does not see a therapist, counselor, psychiatrist, or any other mental health professional for treatment. (R. 18, 21). Furthermore, the ALJ considered the results of Mr. Powell's mental consultative examination, his self-reported daily activities, and his verbal responses and overall demeanor at the hearing in his decision. (R. 18-19). Finally, the ALJ utilized the findings of the State agency consultants in reaching his final conclusions on Mr. Powell's RFC. (R. 20).

As a result, the ALJ determined that Mr. Powell has the residual functional capacity to perform at less than a full range of sedentary work as defined in 20 C.F.R. 416.967(a). (R. 16). Specifically, Mr. Powell is limited to lifting no more than five pounds frequently and ten pounds occasionally; he cannot lift above shoulder height as a result of his back and neck impairments; he can stand and walk for at least two hours in an eight hour workday and sit for at least six hours in an eight hour workday; he requires a sit/stand option to change positions occasionally; he must avoid exposure to unprotected heights and extreme temperatures; and his contact with the public must be limited. (R. 16). In addition, the ALJ concluded that Mr. Powell is limited to completing unskilled tasks. (R. 16)

At the fourth step of the sequential analysis, the ALJ must consider whether the claimant retains the RFC necessary to perform past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ concluded that Mr. Powell's previous work as a construction worker and laborer is considered heavy and semi-skilled work. (R. 20). Thus, the ALJ concluded that Mr. Powell is unable to perform his past relevant work. (R. 20).

Where, as here, the claimant is unable to resume his past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis.  This step requires consideration of whether, in light of vocational factors such as age, education,

work experience, and RFC, the claimant is capable of other work in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). At this step, the burden of proof shifts to the agency to establish that the claimant retains the RFC to engage in an alternative job which exists in the national economy. McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The agency must prove both the claimant's capacity to perform the job and that the job is available. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983). Before the agency may conclude that the claimant can perform alternative skilled or semi-skilled work, it must show that he possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary. McLain, 715 F.2d at 869.

In this case, the ALJ found that although Mr. Powell is unable to perform his past relevant work, given his age, education, work experience and RFC, jobs exist in significant numbers in the national economy that he can perform. (R. 21). The ALJ posed two hypothetical questions to the vocational expert ("VE"). (R. 61-63). The first question asked the VE whether there were jobs available that addressed Mr. Powell's limitations and required a "light level of exertion as defined in the Dictionary of Occupational Titles" ("DOT"). (R. 62). The

second, and more relevant question based on the ALJ's final RFC

determination, was:

> [A]ssume we have a person who's a younger
> individual[3] with a limited education and past
> relevant work history similar to that of the
> claimant. This hypothetical individual might
> be able to do work activity at a sedentary
> level of exertion as defined in the
> Dictionary of Occupational Titles with the
> following [inaudible]. Simple jobs that are
> just simple, routine in nature. Should not
> involve any overhead work. Also should not
> avoid exposure to hazards such as dangerous
> implements, heights. Should also entail an
> occasional change of position to relieve
> postural discomfort. And should not entail
> any extensive public contact. With those
> limits, any jobs?

(R. 63). The ALJ also asked the VE to confirm her testimony was

consistent with the DOT, which she did, with the additional

explanation that the inclusion of the "change of position"

requirement was based on her own experience as a Vocational

Rehabilitation Counselor, not the DOT, because the DOT does not

address that type of requirement. (R. 63-64).

Based on the testimony of the VE, the ALJ determined that

Mr. Powell could perform the requirements of representative

occupations, such as, taper for printer circuit boards (200 jobs

locally, 56,000 nationally), final assembler for bench work (500

jobs locally, 62,000 nationally), addresser (100 jobs locally,

30,000 nationally), pre-assembler for printer circuit boards

---

[3] 20 C.F.R. § 416.963(c) defines anyone under the age of 50 as a "younger
person." Mr. Powell was 44 at the date of his application for benefits. (R.
20).

(350 jobs locally, 385,000 nationally), assembler for small products (600 jobs locally, 62,000 nationally), and router (200 jobs locally, 180,000 nationally). (R. 21).

Therefore, the ALJ concluded that Mr. Powell had not been under disability since the alleged onset date of March 18, 2008, the date the application was filed. (R. 22).

## IV. Standard of Review

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence, not to try plaintiff's claim de novo. King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). It is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or

substitute its judgment for that of the Commissioner. <u>Craig</u>, 76 F.3d at 589; <u>Hayes v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence. <u>Snyder v. Ribicoff</u>, 307 F.2d 518, 520 (4th Cir. 1962). If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them. <u>Underwood v. Ribicoff</u>, 298 F.2d 850 (4th Cir. 1962). However, despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." <u>Coffman</u>, 829 F.2d at 517. The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing." <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 98 (1991).

## V. Discussion

Mr. Powell makes two arguments in support of his position that the ALJ decision should be reversed or, in the alternative, remanded. Mr. Powell argues that: (1) the ALJ's reliance upon VE's testimony was improper because the hypothetical question posed to the VE did not adequately reflect Mr. Powell's RFC, and (2) the ALJ did not sufficiently address Mr. Powell's moderate difficulties in concentration in the RFC assessment and the resulting hypothetical question to the VE.

### a. The ALJ properly relied on the testimony of the VE because the hypothetical question to the expert adequately reflected Mr. Powell's RFC.

Mr. Powell argues that the hypothetical question posed to the VE did not reflect Mr. Powell's RFC because the question failed to include the following limitations:

1) That the Plaintiff can lift no more than 5 pounds frequently and 10 pounds occasionally;
2) That the Plaintiff cannot lift above shoulder height;
3) That the Plaintiff can stand and walk for at least two hours in an eight hour workday;
4) That the Plaintiff can sit for at least six hours in an eight hour workday;
5) That the plaintiff requires a sit/stand option;
6) That the Plaintiff must avoid extreme temperature changes.

(ECF No. 15-1, 4-5). Mr. Powell concludes that, because these limitations were not included in the hypothetical question, the responsive VE testimony did not constitute substantial evidence for the finding at Step 5. (ECF No. 15-1, 5). The Commissioner refutes this allegation, arguing that the listed limitations are included in the hypothetical question through sufficient alternate phrasing, with the exception of the temperature limitation which was omitted. (ECF No. 20-1, 12-14). The Commissioner further argues that the omission of the temperature limitation was harmless error by the ALJ and should not result in reversal. (ECF No. 20-1, 15).

### i. Limitations 1, 3, and 4

Both Mr. Powell and the Commissioner agree that the law is clear that, in order to be relevant or helpful, hypothetical questions posted to VEs must "fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)(citing Stephens v. Secretary of Health Education and Welfare, 603 F.2d 36 (8th Cir. 1979)). They disagree, however, on how precisely the wording of the hypothetical question must match the wording of the RFC. Mr. Powell argues that because certain limitations from the RFC are not expressed verbatim in the question, the question is inadequate. (ECF No. 15-1, 4-5). The Commissioner, however, urges that the question should be interpreted to include the allegedly omitted limitations based on the context of the question and that omissions that constitute harmless error should not invalidate the entire benefits analysis. (ECF No. 20-1, 12-15).

The Fourth Circuit gives "great latitude" to ALJs in the posing of hypothetical questions, "so long as there is substantial evidence to support the ultimate question." Shaffer v. Comm'r, Civil No. SAG-10-1962, 2012 U.S. Dist. LEXIS 28174, at *8 (D. Md. 2012)(citing Koonce v. Apfel, No. 98-1144, 1999 U.S. App. LEXIS 307, at *15 (4th Cir. 1999)). In fact, "a hypothetical question is unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had

sufficient evidence." <u>Fisher v. Barnhart</u>, 181 Fed Appx. 359, 364 (4th Cir. 2006)(citing <u>Johnson v. Barnhart</u>, 434 F.3d 650, 659 (4th Cir. 2005)). More specifically, a verbatim recitation of the claimant's limitations is not necessary when posing the hypothetical question. <u>Russell v. Barnhart</u>, 58 Fed. Appx. 25, 30-31 (4th Cir. 2003)(finding claimant's diminished level of intellectual functioning was adequately reflected by including other limitations such as his ability to maintain attention); <u>Yoho v. Commissioner of Soc. Sec.</u>, No. 98-1684, 1998 U.S. App. LEXIS 32685, at *8 (4th Cir. 1998)("There is no obligation, however, to transfer the findings on the PRTF verbatim to the hypothetical questions.")[4]; <u>Jones v. Asture</u>, Civil Action No. CBD-09-2314, 2010 U.S. Dist. LEXIS 125507, at *30-31 (D. Md. 2010)("not fatal" for the ALJ to describe limitations rather than using exact terminology). Because Fourth Circuit case law does not require a verbatim recitation of the claimant's limitations in the hypothetical question, the question is appropriate as long as it adequately reflects the limitations supported by the record, even if they are not precisely quoted.

In this case, the ALJ's hypothetical question limited Mr.

---

[4] Although this case is unpublished and was decided prior to January 1, 2007, it articulates the Fourth Circuit's view that verbatim recitation of limitations is not mandatory. This case has been cited extensively and recently in cases from district court opinions within the Circuit. See, e.g. <u>Jones</u>, 2010 U.S. Dist. LEXIS 125507, at *29; <u>Wright v. Astrue</u>, 1:09CV0003, 2012 U.S. Dist. LEXIS 7163, at *26 (M.D.N.C. 2012).

Powell to sedentary work, as defined in the DOT. (R. 63). The DOT defines sedentary work as follows:

> "[e]xerting up to 10 pounds of force occasionally[5] and/or a negligible amount of force frequently[6] to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."

DOT Appendix C, § IV, 1991 WL 688702 (1991).

The weight lifting restrictions in the definition of sedentary align with Mr. Powell's limitations, and are in fact, more restrictive than his RFC. According to the ALJ's RFC, Mr. Powell is able to lift five pounds frequently, but the definition of sedentary only allows for a negligible amount of force frequently. Id. The definition and Mr. Powell's RFC are the same regarding the limitation on lifting ten pounds only occasionally. Id.

The definition of sedentary work indicates that a job is considered sedentary if it involves sitting most of the time, but may involve walking or standing for brief periods of time that are required only occasionally. Id. SSR 83-10 contains a glossary with the agency uses to elaborate on "the activities

---

[5] The DOT defines "occasionally" as activity or a condition that exists up to 1/3 of the time.
[6] The DOT defines "frequently" as activity or a condition that exists from 1/3 to 2/3 of the time.

needed to carry out the requirements of sedentary, light, and medium work based on the same resource materials noted in section 200.00(b) of Appendix 2," which includes the DOT. SSR 83-10, 1983 SSR LEXIS 30, at 13 (1983). This glossary explains the definition of sedentary exertion in a way that matches Mr. Powell's RFC: "Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Id.

Accordingly, because limitations 1, 3, and 4 are encompassed in the definition of "sedentary" in the DOT and the VE testified that her answers complied with the DOT, the limitations did not need to be expressly stated in the hypothetical question. Wilson v. Astrue, Civil No. SAG-12-313, 2013 U.S. Dist. LEXIS 26167, at *9 (D. Md. 2013)(finding no error in formulation of a hypothetical question because "the VE knew to consider all of the limitations associated with sedentary work, which comport with the RFC the ALJ found" and "[t]he VE is highly-experienced and well-trained in these assessments"). The Court agrees.

### ii. Limitation 2

The Commissioner's argument that it is difficult to distinguish between an inability to perform overhead work and an

inability to lift above shoulder height is reasonable. (ECF 20-1, 13). The plaintiff does not counter this argument in any way, apparently clinging to his view that the recitation of the limitations to the VE must be verbatim from the RFC analysis. It is difficult to imagine a job that does not involve overhead work that would still require Mr. Powell to lift above shoulder height. Therefore, limitation 2 (shoulder) is adequately reflected in the ALJ's instruction that the VE should exclude jobs that "involve any overhead work." (R. 63).

### iii. Limitation 5

In his RFC analysis, the ALJ used the phrase "sit/stand option" to describe Mr. Powell's postural limitations. (R. 16). In his hypothetical question, however, he phrased "sit/stand option" in a different manner, by including the requirement that any potential job allow for "an occasional change of position to relieve postural discomfort." (R. 63). The language used in the hypothetical question is merely a more descriptive explanation of the term "sit/stand option." Accordingly, limitation 5 (sit/stand option) is adequately reflected in the ALJ's hypothetical question. See Jones, 2010 U.S. Dist. LEXIS 125507 at *30-31 (holding a difference in word choice and phrasing is not fatal to the validity of a hypothetical question).

Because the above limitations were adequately reflected in the hypothetical question, the ALJ properly relied on the VE's testimony in his conclusion at Step 5.

### iv. Limitation 6

Mr. Powell also alleges that the ALJ erred by neglecting to include the environmental limitation (limitation 6) from his RFC analysis in the hypothetical question posed to the VE. (ECF No. 15-1, 4-5). The Commissioner does not dispute that the limitation was omitted from the hypothetical question, but argues that the omission was harmless error that should not result in a reversal or remand of the case. (ECF No. 20-1, 14).

When an ALJ makes an error that will not change the substance of the decision reached, the error is harmless, and the decision should not be reversed or remanded. Morgan v. Barnhart, 142 Fed. Appx. 716, 723 (4th Cir. 2005)(citing Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004)). Several courts in the Fourth Circuit have found it to be harmless error for an ALJ to omit a limitation in the hypothetical question when the resulting jobs presented by the VE accommodate the limitation. See Hyson v. Astrue, No. BPG-10-0308, at 7 (D. Md. June 27, 2012)(holding DOT job description for plaintiff's past work was compatible with her RFC, so ALJ's errors in forming hypothetical question were harmless); McClellan v. Comm'r, Civil No. SAG-12-1767, 2013 U.S. Dist.

LEXIS 56049, at *10 (D. Md. 2013)(finding omission of
restriction on climbing was harmless error because jobs
presented by VE did not require climbing per DOT).

Here, the jobs presented by the VE as evidence that Mr.
Powell is able to work in a job available in the national
economy do not include exposure to extreme temperatures
according to the DOT[7], so including the limitation in the
hypothetical question would not have changed the outcome of the
case. Accordingly, the omission was harmless error, and should
not result in a reversal or remand of the case.

### b. The ALJ sufficiently addressed Mr. Powell's moderate difficulties in concentration in the RFC and the resulting hypothetical question to the VE.

Mr. Powell also argues that the ALJ failed to adequately
address his moderate difficulties in concentration in the RFC
and the resulting hypothetical question. (ECF No. 15-1, 5-6).
More specifically, he alleges that the ALJ's assessment that Mr.
Powell is "limited to completing unskilled tasks" did not
adequately reflect his difficulties in concentration, relying on
case law from other circuits to support this conclusion. (ECF
No. 15-1, 6).

However, in Fisher v. Barnhart, the Fourth Circuit ruled
that the ALJ properly addressed the claimant's moderate

---

[7] See DOT § 017.684-010, 1991 WL 646421 (1991)("Taper, Printed Circuit
Layout"); DOT § 713.687-018, 1991 WL 679271 (1991)("Final Assembler"); DOT §
209.587-010, 1991 WL 671797 (1991)("Addresser").

difficulties with concentration when including a prohibition on complex tasks in the RFC, because he had properly considered the medical opinions in the record. 181 Fed. Appx. 359 at 364. The Court found that "because the ALJ's [RFC] is supported by substantial evidence and because the challenged hypothetical question merely incorporated that determination, the ALJ committed no error." Id. at 365. In another Fourth Circuit case, the Court similarly held that an ALJ was correct in limiting a claimant with significant difficulties in pace, concentration, or persistence to "unskilled work of a simple, routine and repetitive nature[.]" Bentley v. Chater, No. 96-1782, 1997 U.S. App. LEXIS 10559, at *3 (4th Cir. 1997). Other courts within the Fourth Circuit have held similarly. See, e.g., Mills v. Astrue, Civil Action No. 2:11-cv-65, 2012 U.S. Dist. LEXIS 80695, at *60 (N.D. W. Va. 2012)("the ALJ's decision that Plaintiff can engage in simple, unskilled work despite moderate limitations in concentration, persistence, and pace is supported by substantial evidence, and the hypothetical to the VE was appropriate"); Sensing v. Astrue, C/A No. 6:10-cv-03084-RBH, 2012 U.S. Dist. LEXIS 40653, at *20 (D.S.C. 2012)(limiting hypothetical question to work that includes only simple one to two-step tasks and avoiding contact with the public sufficiently accounts for limitations in concentration, persistence, and pace); Megarejo v. Astrue, Civil No. JKS 08-3140, 2009 U.S. Dist. LEXIS 116662,

at *6 (D. Md. 2009)(limiting claimant to unskilled work properly addresses mild-to-moderate difficulties in concentration, persistence, and pace).

Based on the rulings in these cases, specifically <u>Fisher v. Barnhart</u>, while the ALJ may not have specifically worded his RFC and hypothetical question to address Mr. Powell's moderate difficulties in concentration, pace, and persistence, his phrasing limiting the claimant to "unskilled tasks" and jobs that are "simple" and "routine in nature" is sufficient to address the limitation. 181 Fed. Appx. 359 at 364.

Because the RFC and hypothetical question adequately reflected all of Mr. Powell's limitations, it was appropriate for the ALJ to rely on the VE's testimony that Mr. Powell is able to perform jobs that are available in the national economy.

## VI.  Conclusion

For the foregoing reasons, the Court hereby DENIES plaintiff's motion for summary judgment, GRANTS defendant's motion for summary judgment, and AFFIRMS the decision of the commissioner.

/s/

Susan K. Gauvey
United States Magistrate Judge